IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

TAMMI C. FREDERICKSEN,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. C13-2084

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.    INTRODUCTION ........................................... 2

II.    PROCEDURAL BACKGROUND ........................... 2

III.    PRINCIPLES OF REVIEW ................................ 4

IV.    FACTS .................................................... 5
     A.    Fredericksen's Education and Employment Background ........ 5
     B.    Vocational Expert's Testimony from the Administrative Hearing
         Held on August 14, 2013 ............................... 6
     C.    Fredericksen's Medical History ........................ 7

V.    CONCLUSIONS OF LAW ................................. 12
     A.    ALJ's Disability Determination ........................ 12
     B.    Objections Raised By Claimant ........................ 14
         1.    Dr. Crowley's Opinions ........................ 15
         2.    Andresen's Opinions ........................... 18
         3.    Dr. Roberts' Opinions ......................... 21

VI.    CONCLUSION ........................................... 24

VII.    ORDER .................................................. 24

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Tammi C. Fredericksen on December 7, 2013, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits.[1] Fredericksen asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Fredericksen requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On July 13, 2009, Fredericksen applied for disability insurance benefits. In her application, Fredericksen alleged an inability to work since June 1, 2009 due to bipolar disorder and degenerative arthritis in her back and knees. Fredericksen's application was denied on October 1, 2009. On December 2, 2009, her application was denied on reconsideration. On January 4, 2010, Fredericksen requested an administrative hearing before an Administrative Law Judge ("ALJ"). On April 14, 2011, Fredericksen appeared via video conference with her attorney before ALJ Jeffrey Marvel for an administrative hearing. In a decision dated April 28, 2011, the ALJ denied Fredericksen's claim. Fredericksen appealed the ALJ's decision. On December 20, 2011, the Appeals Council denied Fredericksen's request for review. Consequently, the ALJ's April 28, 2011 decision was adopted as the Commissioner's final decision.

On February 20, 2012, Fredericksen filed a Complaint seeking judicial review of the Commissioner's decision to deny her application for disability insurance benefits.[2] On January 22, 2013, United States District Court Judge Edward J. McManus reversed and

---

[1] On February 3, 2014, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

[2] *See* docket number 1 in case number 6:12-cv-2011-EJM (N.D. Iowa).

remanded Fredericksen's case to the Commissioner for further consideration of the medical opinion evidence in the record.[3] Prior to Judge McManus' remand order, on July 6, 2012, Fredericksen filed a new application for disability insurance benefits, again alleging an inability to work since June 1, 2009. Her new application was denied on September 4, 2012. On January 9, 2013, the application was denied on reconsideration. On February 21, 2013, Fredericksen requested an administrative hearing before an ALJ. On August 14, 2013, Fredericksen appeared via video conference with her attorney before ALJ Eric S. Basse for an administrative hearing "on remand from the Appeals Council pursuant to a remand from the United States District Court for the Northern District of Iowa."[4] Additionally, Fredericksen's subsequent application for disability insurance benefits filed in July 2012, was incorporated into the ALJ's administrative hearing on remand and final disability determination.[5] In a decision dated September 30, 2013, the ALJ issued a partially favorable ruling, finding Fredericksen disabled beginning on December 1, 2012. The ALJ determined, however, that Fredericksen was not disabled during the period of June 1, 2009, her alleged disability onset date, to November 30, 2012. Fredericksen did not appeal the ALJ's decision on remand, and the Appeals Council did not review the ALJ's decision on its own. Consequently, the ALJ's September 30, 2013 became the Commissioner's final decision.[6]

---

[3] *See* docket number 11 in case number 6:12-cv-2011-EJM.

[4] Administrative Record at 675.

[5] *See* Administrative Record at 675 (The ALJ providing in his decision that Fredericksen "filed a subsequent application that has been incorporated with the current case.").

[6] *See* Administrative Record at 672 (Providing in the notice of the ALJ's decision to Fredericksen that "[i]f you do not file written exceptions and the Appeals Council does not review my decision on its own, my decision will become final on the 61st day
(continued...)

3

On December 7, 2013, Fredericksen filed the instant action for judicial review of the ALJ's September 30, 2013 decision.

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's

---

[6](...continued)
following the date of this notice.").

decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Fredericksen's Education and Employment Background

Fredericksen was born in 1970. She completed the 12th grade in school. Her past relevant work consists of the following jobs: food server, machine packager, resident aide, cashier, receptionist, sales attendant, and apparel rental clerk.

## B. Vocational Expert's Testimony from the Administrative Hearing Held on August 14, 2013

At the administrative hearing, the ALJ provided vocational expert Vanessa May with a hypothetical for an individual who is able to:

> perform light work . . . [i]n that she can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk six hours out of an eight hour work day, sit for six hours out of an eight hour work day, occasionally stoop, kneel, crouch, crawl and climb and frequently balance, should not perform work that requires close attention to detail due to deficits and concentration, persistence and pace and can have occasional contact with the public, co-workers and supervisors.

(Administrative Record at 716.) The vocational expert testified that under such limitations, Fredericksen could not perform her past relevant work. The vocational expert testified, however, that Fredericksen could perform the following jobs: (1) retail marker (2,500 positions in Iowa and 200,000 positions in the nation), (2) mail clerk (700 positions in Iowa and 64,000 positions in the nation), and (3) housekeeping cleaner (10,000 positions in Iowa and 890,000 positions in the nation). The ALJ provided the vocational expert with a second hypothetical:

> This person, it's the same person with the additional restrictions, can occasionally climb, balance, stoop, kneel and crouch, cannot climb ladders, ropes and scaffolds, cannot crawl with the bilateral upper extremities, can reach overhead occasionally. Again, this person could perform simple routine tasks and have occasional contact with the public, co-workers and supervisors.

(Administrative Record at 717.) The vocational expert answered that under such limitations, Fredericksen could perform both the retail marker and mail clerk jobs under

the first hypothetical, but could not perform the housekeeping cleaner job. Instead of the housekeeping cleaner job, the vocational expert opined that Fredericksen could perform the job of photocopy machine operator (280 positions in Iowa and 29,000 positions in the nation).

## C. Fredericksen's Medical History

On July 10, 2009, Fredericksen met with Dr. William Crowley, M.D., for a psychiatric evaluation. In reviewing Fredericksen's medical history, Dr. Crowley noted that Fredericksen had been off biploar disorder medication since 2005. Fredericksen reported that she is "sad every day, can't sleep, her thoughts are racing, she gets agitated, feels worthless and thinks things are hopeless but she's also irritable, [and] has crying spells."[7] Dr. Crowley also noted that Fredericksen quit her job in April 2009 due to her irritability causing conflicts with her employer. On mental status examination, Dr. Crowley found that Fredericksen was depressed and tearful with constricted affect. Furthermore, Dr. Crowley found no evidence of psychosis or suicidal ideation. Finally, Dr. Crowley determined that her "[i]ntelligence is average or above. Memory is grossly intact. Insight is good. Her judgment is fair."[8] Dr. Crowley diagnosed Fredericksen with bipolar disorder and anxiety disorder. Dr. Crowley recommended medication and psychotherapy as treatment.

On August 24, 2009, Dr. Scott Shafer, Ph.D., reviewed Fredericksen's medical records and provided Disability Determination Services ("DDS") with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Fredericksen. On the Psychiatric Review Technique assessment, Dr. Shafer diagnosed Fredericksen with bipolar disorder and anxiety disorder. Dr. Shafer determined that Fredericksen had the following limitations: mild restriction of activities of daily living,

---

[7] Administrative Record at 573.

[8] Administrative Record at 573.

moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Shafer determined that Fredericksen was moderately limited in her ability to: maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and accept instructions and respond appropriately to criticism from supervisors. Dr. Shafer concluded that:

> [Fredericksen] has a severe mental impairment that does not meet or equal a referenced listing. This is based on the following observations. . . . She has had no treatment for a mental condition until recently. [Activities of daily living] indicate limitations based on a physical condition, but few limitations based on a mental condition. [Fredericksen] retains the ability to understand, remember, and follow instructions. Her attention, concentration, and pace may vary, but are adequate for tasks not requiring sustained attention. She can interact appropriately with the public, coworkers, and supervisors on at least a limited basis. Her judgment is adequate to adjust to changes in the workplace.

(Administrative Record at 534.)

On September 30, 2009, Dr. Chystalla Daly, D.O., reviewed Fredericksen's medical records and provided DDS with a physical RFC assessment for Fredericksen. Dr. Daly determined that Fredericksen could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Daly also determined that Fredericksen could occasionally climb, stoop, kneel, crouch, and crawl, and frequently balance. Dr. Daly found no manipulative, visual, communicative, or environmental limitations.

8

On March 22, 2011, at the request of Fredericksen's attorney, Dr. Crowley, Fredericksen's treating psychiatrist, filled out "Mental Impairment Interrogatories" for Fredericksen. Dr. Crowley noted that he had been having routine contact with Fredericksen since July 2009. Dr. Crowley diagnosed Fredericksen with bipolar disorder, anxiety disorder, and personality disorder. Dr. Crowley found the following signs and symptoms for Fredericksen: appetite disturbance with weight change, sleep disturbance, mood disturbance, emotional lability, anhedonia, difficulty thinking and concentrating, social withdrawal and isolation, decreased energy, manic syndrome, and irritability. Dr. Crowley also noted that without medications, Fredericksen has auditory hallucinations. Dr. Crowley stated that Fredericksen's mood disorder "is manageable with medications," but she "has a chronic mental illness, that will require ongoing treatment."[9] Dr. Crowley opined that Fredericksen would miss work more than three times per month due to her impairments or treatment for her impairments. Dr. Crowley determined that Fredericksen had marked limitations in the ability to: remember locations and work-like procedures, understand and remember very short, simple instructions, carry out very short and simple instructions, ask simple questions or request assistance, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. Dr. Crowley further determined that Fredericksen had the following limitations: no restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace.

On November 15, 2011, Fredericksen was involved in a motor vehicle accident. She was struck by a truck traveling through an intersection. Her injuries included thoracic spine fracture and facial injuries. Fredericksen was given a back brace to wear and ordered to participate in physical therapy.

---

[9] Administrative Record at 636.

On July 15, 2013, Fredericksen met with Dr. Richard J. Roberts, Ph.D., for a neuropsychology evaluation. Dr. Roberts noted that:

> [Fredericksen] was referred for a comprehensive neuropsychological evaluation by her attorney in order to clarify any possible cognitive or behavioral deficits following a traffic accident on or about 11/15/2011. Her pickup truck was reportedly struck by a semi-truck, and [Fredericksen] was reportedly thrown from her vehicle. She sustained a broken nose and a skull fracture, but has no recollection of the accident itself.

(Administrative Record at 1500.) Fredericksen described the following symptoms to Dr. Roberts: poor short-term memory, brief confusional spells, sudden mood swings for no apparent reason, post-traumatic headaches, blank spells, and difficulty putting her thoughts into words. Upon examination, Dr. Roberts found "clear evidence of psychomotor slowing."[10] Dr. Roberts also found "clear evidence of short-term memory loss, with nonverbal short-term memory somewhat better preserved than verbal short-term memory."[11] Dr. Roberts concluded that:

> Given the breadth and severity of [Fredericksen's] cognitive and behavioral symptoms, especially her poor short-term memory functioning, I cannot think of a self-sustaining job where she could succeed. Put another way, this patient is, in my judgment, vocationally disabled and likely to remain so even if further treatment is successful.

(Administrative Record at 1503.)

On July 16, 2013, Joyce Andresen, Fredericksen's treating counselor, provided a mental medical source statement for Fredericksen. Andresen found that Fredericksen was "occasionally" unable to: remember locations and work-like procedures, understand and remember short, simple instructions, carry out very short and simple instructions, maintain

---

[10] Administrative Record at 1501.

[11] Administrative Record at 1502.

attention and concentration for extended periods of time, perform activities within a schedule, sustain an ordinary routine without special supervision, work in coordination or proximity to others without being distracted by them, make simple work-related decisions, interact appropriately with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. Andresen also found that Fredericksen was "frequently" unable to: understand and remember detailed instructions, carry out detailed instructions, complete a normal workday and workweek without interruptions from psychological based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. In conclusion, Andresen noted that Fredericksen "has shown an increase in depression and anxiety following a car accident in Nov[ember] 2011. . . . She reports changes with memory, temperment [sic], lethargy and breathing."[12]

On the same date, Dr. Crowley wrote a letter addressed to Fredericksen's attorney, on Fredericksen's behalf. Dr. Crowley confirmed Andresen's opinion that Fredericksen had "an increase in her symptoms of depression and anxiety since she was in a car accident in November, 2011."[13] Dr. Crowley also noted a change in Fredericksen's ability to concentrate, short-term memory problems, and increased irritability. Dr. Cowley concluded that "[i]t would be difficult for [Fredericksen] to obtain or maintain a job[.] . . . Her memory problems and short temper would further impede her ability to sustain full time employment."[14]

---

[12] Administrative Record at 1407.

[13] Administrative Record at 1408.

[14] Id.

On August 2, 2013, Andresen wrote a letter on Fredericksen's behalf. Andresen noted that she had seen Fredericksen "at least" 25 times from July 20, 2009 through November 1, 2011. Andresen stated that "I agree with Dr. Crowley's Mental Impairment Interrogatories dated 3-22-2011."[15] Andresen further stated that:

> I have seen [Fredericksen's] condition worsen since this date.
> Her medical condition, after her car accident, has had a direct
> effect on her mental health. She further states the car accident
> has affected her memory and her temperament.

(Administrative Record at 1551.) Additionally, Andresen indicated that Fredericksen's physical condition makes her difficulties with depression worse. In conclusion, Andresen opined that it "would be difficult for [Fredericksen] to obtain or maintain a job[.] . . . Her memory problems and short temper would further impede her ability to sustain full time employment."[16]

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that prior to December 1, 2012, Fredericksen was not disabled.[17] In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484

---

[15] *Id.* at 1551.

[16] Administrative Record at 1551.

[17] The ALJ determined that beginning on December 1, 2012, "the severity of [Fredericksen's] impairments has met the criteria of section 3.02 of 20 CFR part 404, Subpart P, Appendix 1." Administrative Record at 686. Specifically, beginning on December 1, 2012, the ALJ determined that Fredericksen has a pulmonary disease that meets Listing 3.02(C). *See id.* Fredericksen's pulmonary disease is not at issue in this case and will not be addressed in this decision. Instead, this case focuses on whether Fredericksen was disabled prior to December 1, 2012, primarily as a result of her mental impairments.

F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id*. The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Fredericksen had not engaged in substantial gainful activity since June 1, 2009. At the second step, the ALJ concluded from the medical evidence that since June 1, 2009 Fredericksen had the following severe impairments: lumbar degenerative disc disease, degenerative joint disease of the left knee, bipolar affective disorder, and borderline personality disorder.[18] At the third step, the ALJ found that prior to December 1, 2012, the date Fredericksen became disabled, she did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Fredericksen's RFC as follows:

> [Fredericksen] has the residual functional capacity to perform light work . . . except: she could only occasionally stoop, kneel, crouch, crawl, or climb. She could frequently balance. She could not perform work that required close detail due to deficits in concentration, persistence, or pace. She could occasionally have contact with the public, coworkers, or supervisors.

(Administrative Record at 678.) Also at the fourth step, the ALJ determined that Fredericksen could not perform her past relevant work. At the fifth step, the ALJ determined that prior to December 1, 2012, and based on her age, education, previous work experience, and RFC, Fredericksen could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Fredericksen was not disabled.

### B. Objections Raised By Claimant

Fredericksen argues that the ALJ erred in three respects. First, Fredericksen argues that the ALJ failed to properly evaluate the opinions of her treating psychiatrist,

---

[18] Beginning on December 1, 2012, the ALJ determined that Fredericksen had "the same severe impairments [since June 1, 2009,] and the additional condition of interstitial lung disease vs. pulmonary fibrosis." Administrative Record at 677.

Dr. Crowley. Second, Fredericksen argues that the ALJ failed to properly evaluate the opinions of her treating mental health counselor, Joyce Andresen. Lastly, Fredericksen argues that the ALJ failed to address and evaluate the opinions of Dr. Roberts, an examining neuropsychologist.

### 1. Dr. Crowley's Opinions

Fredericksen argues that the ALJ failed to properly evaluate the opinions of her treating psychiatrist, Dr. Crowley. Specifically, Fredericksen argues that the ALJ failed to properly weigh Dr. Crowley's opinions. Fredericksen also argues that the ALJ's reasons for discounting Dr. Crowley's opinions are not supported by substantial evidence in the record. Fredericksen concludes that this matter should be remanded for payment of benefits; or in the alternative, remanded for further consideration of Dr. Crowley's opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id.*.); *Strongson v. Barnhart,* 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is

inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In his decision, the ALJ addressed Dr. Crowley's opinions as follows:

> Dr. Crowley's opinions are considered as those of a treating physician, but the undersigned has given limited weight to Dr. Crowley's opinions, to the extent they are consistent with the residual functional capacity detailed above. Although [Fredericksen] has experienced continued symptoms and

16

resulting limitations due to ongoing mental health conditions, the medical evidence does not support the severity of restrictions as proposed by Dr. Crowley. More specifically, Dr. Crowley's own treatment notes do not detail the frequency or intensity of treatment one would expect, given his later description of symptoms and limitations. There is little objective medical evidence to support the severity of Dr. Crowley's opinions. For example, while he opined that [Fredericksen] would have repeated deteriorations or episodes of decompensation, there is no record of any hospitalizations or other intense therapy to support this conclusion. In fact, treatment sessions frequently indicated a more stable mental status examination. As noted previously, [Fredericksen] appeared to do well with medication and individual treatment. Regarding Dr. Crowley's use of the word "often" for concentration, persistence, and pace, this has been replaced by the word "moderate." Again, while this might suggest some symptoms and limitations in the domain of concentration, persistence and pace, it does not suggest greater restrictions than those already accounted for in the residual functional capacity detailed above. [Fredericksen] exhibited a fair to good mental status examination during treatment sessions on a consistent basis. Likewise, the medical evidence does not support Dr. Crowley's conclusions that [Fredericksen] would miss three or more days of work per month. There is nothing in the record that indicated [she] was unable to leave her home due to mental health symptoms. She denied problems at times, exhibited a good mental status examination, and attended all appointments. The undersigned recognizes that she likely would have some limitations in social functioning, as she stated she tended to isolate and had problems getting along with the public. Interestingly, she seemed to have no social problems at her work up to the alleged onset date. However, these symptoms have been accounted for in the residual functional capacity above. . . . Dr. Crowley provided no explanation as to why he gave opinions more severe than what the medical evidence supports. A longitudinal examination of the record as a whole, rather than brief remarks on a questionnaire, provides a more accurate portrayal of

[Fredericksen's] ongoing mental health symptoms and limitations. This is particularly illuminating considering the rather brief interaction that Dr. Crowley had with [Fredericksen]. [She] testified she saw Dr. Crowley every two months. A snapshot interview every two months does not suggest treating someone with the intensity that would let the examiner know that the individual would miss work several times per month and be decompensated for two-week periods repeatedly.

(Administrative Record at 681-82.)

Having reviewed the entire record, the Court finds the ALJ properly considered and addressed the opinion evidence provided by Dr. Crowley. In particular, the ALJ fully and fairly developed the evidence as it pertains to Dr. Crowley.[19] In doing so, the ALJ fulfilled the federal court remand order to further consider and develop the medical opinions of Dr. Crowley.[20] Furthermore, the Court finds the ALJ provided "good reasons" for rejecting Dr. Crowley's opinions. *See Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 301.

## 2. *Andresen's Opinions*

Joyce Andresen, a licensed social worker and mental health counselor, is not classified as an "acceptable medical source" under the Social Security Regulations. Even though Andresen is not an "acceptable medical source," the Social Security Administration ("SSA") requires an ALJ to consider such opinions in making a final disability determination. On August 9, 2006, the SSA issued Social Security Ruling 06-03p. The purpose of Ruling 06-03p was to clarify how the SSA considers opinions from sources not

---

[19] *See* Administrative Record at 681 (providing review of Fredericksen's mental health treatment, including treatment by Dr. Crowley).

[20] *See* docket number 11 in case number 6:12-cv-2011-EJM.

classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). Ruling 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a nurse practitioner, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. Furthermore, in discussing SSR 06-03p, the Eighth Circuit Court of Appeals, in *Sloan*, pointed out:

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according to SSR 06-3p. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

*Sloan*, 499 F.3d at 888 (quoting SSR 06-03p). In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

In his decision, the ALJ addressed Andresen's opinions as follows:

> Joyce Andresen, LISW, Psychiatric Social Worker, submitted a letter in August 2013. Ms. Andresen stated that she has seen [Fredericksen] at least 25 times from the time period of July 2009 through November 2011. She opined that she agreed with Dr. Crowley's opinions dated March 2011. However, she noted that [Fredericksen's] condition worsened after that date. Specifically, she noted that [Fredericksen's] mental health symptoms increased after a car accident in November

2011. She stated [Fredericksen] wears oxygen 24 hours per day since the accident. She further described memory problems. Ms. Andresen's opinions are given little weight for the period prior to the established onset date, for the reasons discussed with respect to the opinions of Dr. Crowley. The record shows [Fredericksen] has had a slowly progressing lung disease for quite some time, but that condition became very symptomatic around December 1, 2012. As such, Ms. Andresen's opinions regarding [Fredericksen's] need for oxygen are consistent with the medical evidence as of December 2012 and are given considerable weight as of that date.

(Administrative Record at 682-83.)

It is clear from the ALJ's decision that he thoroughly considered the opinions of Andresen. In discounting her opinions, the ALJ relied on his reasoning for discounting the opinions of Dr. Crowley.[21] Because Andresen worked closely with Dr. Crowley in treating Fredericksen, and Andresen specifically stated that she agreed with Dr. Crowley's functional assessment of Fredericksen, the Court finds no flaw in the ALJ's reasoning for discounting Andresen's opinions. Moreover, having reviewed the entire record, the Court finds that the ALJ properly considered Andresen's opinions in accordance with SSR 06-03p. Furthermore, the ALJ properly articulated his reasons for the weight granted to Andresen's opinions, and for finding Andresen's opinions, like Dr. Crowley's opinions to be inconsistent with the record as a whole. *See Raney*, 396 F.3d at 1010 (Providing that in determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record."). Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court

---

[21] *See* Administrative Record at 682-83 ("Ms. Andresen's opinions are given little weight for the period prior to the established onset date, for the reasons discussed with respect to the opinions of Dr. Crowley.").

upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. Dr. Roberts' Opinions

Fredericksen argues that the ALJ failed to evaluate the opinions of Dr. Roberts, a consultative examining neuropsychologist. Fredericksen maintains that following a motor vehicle accident in November 2011, she began to complain of memory problems and cognitive limitations. According to Fredericksen, Dr. Roberts, in his July 2013 neuropsychological evaluation "actually documented her severe cognitive limitations."[22] For example, Dr. Roberts concluded that:

> Given the breadth and severity of [Fredericksen's] cognitive and behavioral symptoms, especially her poor short-term memory functioning, I cannot think of a self-sustaining job where she could succeed. Put another way, this patient is, in my judgment, vocationally disabled and likely to remain so even if further treatment is successful.

(Administrative Record at 1503.) Fredericksen points out that "[t]he ALJ failed to acknowledge and evaluate the neuropsychological report, presumably because the examination occurred in 2013 and the ALJ found [her] disabled as of December 2012."[23] Fredericksen asserts that even though the evaluation occurred in July 2013, Dr. Roberts' opinions should be applied to the time period prior to December 1, 2012, her disability onset date. However, Fredericksen offers no concrete reasoning for this assertion, and only provides vague suggestions that there is evidence to support her assertion. Nevertheless, Fredericksen concludes that because the ALJ:

> failed to address Dr. Roberts's report generally and failed to address Dr. Roberts' opinions. This is error. The ALJ's decision should be reversed and this matter remanded for

---

[22] Fredericksen's Brief (docket number 8) at 21.

[23] *Id.*

> calculation and payment of benefits. Alternatively, the ALJ's
> decision should be reversed in this matter [and] remanded for
> further consideration of Dr. Roberts's report and opinions.

Fredericksen's Brief (docket number 8) at 24-25. Presumably, Fredericksen's argument is that if Dr. Roberts' opinions are considered applicable to November 2011, then the ALJ's RFC assessment would be different and would support a finding of disability as of November 2011.

The Court is unpersuaded by Fredericksen's argument. Fredericksen does not direct the Court to any evidence from Dr. Roberts which suggests his opinions from July 2013 should be applied to November 2011. Furthermore, Fredericksen does not discuss how Dr. Roberts' opinions potentially alter the ALJ's RFC assessment, let alone offer any support for the implicit proposition, that if Dr. Roberts' opinions were applied to November 2011, then the ALJ's RFC assessment should change. Moreover, Dr. Roberts was a consultative examining source, whose opinions were rendered approximately 19 months after Fredericksen's motor vehicle accident, and 7 months after the ALJ determined she was disabled. While it would have been better for the ALJ to discuss Dr. Roberts' opinions in his decision, the Eighth Circuit Court of Appeals has stated that an ALJ "'is not required to discuss every piece of evidence submitted.'" *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). Furthermore, failure of an ALJ to cite specific evidence is not an indication that he or she failed to consider such evidence. *Id.*

In further consideration of Fredericksen's argument, the Court bears in mind that when an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be

based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Having reviewed the entire record, the Court finds that the ALJ properly considered Fredericksen's medical records, observations of treating physicians, and Fredericksen's own description of her limitations in making the ALJ's RFC assessment for Fredericksen prior to December 1, 2012, the date the ALJ determined Fredericksen was disabled.[24] *See*

---

[24] *See* Administrative Record at 679-684 (providing thorough discussion of the
(continued...)

*Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's disability determination is based on a fully and fairly developed record, even without explicitly addressing Dr. Roberts' opinions in his decision.[25] *See Cox*, 495 F.3d at 618; *Wildman*, 596 F.3d at 966. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. Accordingly, the Court concludes that Fredericksen's assertion that the ALJ's failure to explicitly address the opinions of Dr. Roberts constituted error is without merit.

## *VI. CONCLUSION*

The Court finds that the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. The Court also finds that the ALJ properly considered and addressed the opinions of Dr. Crowley and Joyce Andresen in making his disability determination, and as required by the federal court remand order. Finally, the Court finds no merit in Fredericksen's argument with regard to the opinions of Dr. Roberts.

## *VII. ORDER*

1.      The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.      Plaintiff's Complaint (docket number 1) is **DISMISSED** with prejudice; and

3.      The Clerk of Court is directed to enter judgment accordingly.

DATED this _25th_ day of _September_, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[24](...continued)
relevant evidence for making a proper RFC determination).

[25] *See id*. (providing thorough discussion of Fredericksen's medical history from 2009 through 2012).

24